ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI DJ 2025-063

| | | |
|---|---|---|
| **JESÚS A. DE LEÓN TRICOCHE**<br><br>Recurrente<br><br>v.<br><br>**DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN**<br><br>Recurrido | TA2025RA00189 | **REVISIÓN** procedente del **Departamento de Corrección y Rehabilitación**<br><br>**B-508-25**<br><br>Sobre:<br>Registro (a de abril de 2025) |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez y la Jueza Boria Vizcarrondo.

**SENTENCIA**

En San Juan, Puerto Rico, a 12 de septiembre de 2025.

Comparece ante nos el señor Jesús A. De León Tricoché (Sr. De León Tricoché o parte recurrente), por derecho propio, mediante un recurso de revisión judicial intitulado *Solicitud de Apelación Civil* en el que solicita que se le ordene a la Administración del Departamento de Corrección y Rehabilitación (DCR o parte recurrida) brindarle unas fotos que se tomaron el 2 de abril de 2025 en el Módulo 1-D de la Institución 501 de Bayamón.

Por los fundamentos que discutiremos a continuación, confirmamos la *Respuesta del área concernida/superintendente* recurrida.

**I.**

El 2 de abril de 2025, el Sr. De León Tricoché presentó una *Solicitud de Remedio Administrativo* ante el Programa de Remedios Administrativos del DCR donde expuso que, ese mismo día, se realizó un registro dirigido por el teniente Pérez Geigel en el Módulo 1-D a las 9:01am. Sostuvo que lo esposaron con otra persona y los sacaron rápido de allí para pasarlos por una máquina. El Sr. De León Tricoché adujo que, luego de ello, el oficial Cruz los dirigió hacia una cancha y, después de dos horas, los devolvieron al módulo donde encontró jabones partidos, una crema explotada, cartas familiares regadas, y papeles legales mojados con crema y pasta dental. Por último, planteó que la ética del DCR era proteger vidas y propiedades y no arruinar, romper y destrozar propiedades.

Luego de ello, el 16 de abril de 2025, el DCR, por conducto del teniente y comandante O'Neill Montalvo, emitió una *Respuesta del Área Concernida/Superintendente*. Expresó que, en las rondas de supervisión del 2 de abril de 2025, dialogaron con los confinados y aclararon información suministrada por el Sr. De León Tricoché mediante su recurso administrativo. Además, arguyó que orientaron a los reclusos sobre las normas y las reglas de sus pertenencias, al igual que al teniente Pérez Geigel, quien estuvo a cargo del registro.

Insatisfecho, el Sr. De León Tricoché presentó una *Solicitud de reconsideración* el 2 de mayo de 2025 donde se amparó a la derogada

*Carta de Derechos de la Persona de Edad Avanzada en Puerto Rico*, Ley Núm. 121 de 12 de julio de 1986 (Ley Núm. 121-1986), 8 LPRA ant. secs. 341 *et seq.*, la cual fue enmendada por la *"Carta de Derechos y la Política Pública del Gobierno a Favor de los Adultos Mayores"*, Ley Núm. 121 de 1 de agosto de 2019 (Ley Núm. 121-2019), según enmendada, 8 LPRA secs. 1511 *et seq.*

Así, el 23 de mayo de 2025, la División de Remedios Administrativos del DCR emitió una *Respuesta de reconsideración al miembro de la población correccional* en la que acogió la petición de reconsideración.

Posteriormente, el 3 de julio de 2025, la División de Remedios Administrativos del DCR emitió una *Resolución,* entregada al confinado el 7 de agosto de 2025, donde confirmó y amplió la respuesta recibida por el teniente O'Neill Montalvo. La División de Remedios Administrativos sostuvo que le indicaron al Sr. De León Tricoché que conversaron con el personal de seguridad respecto a sus alegaciones, y orientaron a la supervisión y oficialidad involucradas en el registro en cuestión. Además, expuso que el Reglamento de Registros, DCR, 30 de diciembre de 2004, disponía que los registros se realizaban para la detección de contrabando, recuperar propiedad hurtada o desaparecida, prevenir fugas y otros riesgos de seguridad.

Inconforme, el Sr. De León Tricoché radicó el recurso de revisión judicial ante nos el 14 de agosto de 2025, y planteó los siguientes señalamientos de error:

> **ERR[Ó] EL DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN AL TENER FUNCIONARIOS QUE NO CUMPLEN CON EL PROTOCOLO DE SUS AGENCIAS Y SON PERSONAS QUE NO LES IMPORTA VIOLENTAR DERECHOS SIN MEDIR LAS [C]IRCUNSTANCIAS DE SUS HECHOS Y SUS ANOTACIONES.**
>
> **ERR[Ó] LA OFICINA DE REMEDIOS ADMINISTRATIVOS AL TENER UN PROCESO MUY FÚTIL Y EXCESIVO DE LA DILACIÓN.**

En síntesis, puntualizó que los funcionarios violentaron los Artículos 2, 6.8, 8, 9 y 11 de la Ley Núm. 121-1986, *supra*, ant. secs. 342, 346h, 346j, 346k, y 346*l*-1; y que hubo un procedimiento administrativo fútil, excesivo y discriminatorio.

Hemos examinado con detenimiento el recurso sometido por el Sr. De León Tricoché y optamos por prescindir de los términos, escritos o procedimientos ulteriores, esto con el propósito de lograr su más justo y eficiente despacho. Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

## II.

### A.

El Artículo 4.006 (c) de la *"Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003"*, Ley Núm. 201 del 22 de

agosto de 2003, según enmendada, 4 LPRA sec. 24y, faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. En el ejercicio de su facultad, los tribunales apelativos están obligados a concederles deferencia a las decisiones administrativas, pues estas poseen la experiencia y el conocimiento especializado respecto a los asuntos que se les han delegado a las agencias. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33; *Torres Rivera v. Policía de PR*, 196 DPR 606, 627 (2016). De este modo, todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo cual la parte que las impugne debe producir suficiente evidencia para derrotarla. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 393-94 (2012).

Cónsono con lo anterior, al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99, 115 (2023). Al aplicar este criterio, los foros revisores deben resolver si la determinación de la agencia, en la interpretación de los reglamentos y las leyes, es razonable. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan, supra*; *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006). Es

decir, la revisión judicial procede si la agencia administrativa actuó arbitraria o ilegalmente, o de una forma tan irrazonable que en su actuación abusó de su discreción. *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR, supra,* pág. 626. De igual modo, al revisar las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. *Hernández Feliciano v. Mun. Quebradillas, supra,* págs. 114-115. La evidencia sustancial es "'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Empresas Ferrer v. A.R.Pe.,* 172 DPR 254, 266 (2007) (citando a *Hernández, Álvarez v. Centro Unido, supra,* pág. 615). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota,* 163 DPR 716, 728 (2005).

Por otro lado, y por lo general, las agencias son las primeras intérpretes de las leyes que rigen el ejercicio de su ministerio. *Buxó Santiago v. Estado Libre Asociado de Puerto Rico,* 2024 TSPR 130. Sin embargo, los tribunales son el ente con el poder de interpretar las leyes y la constitución. *OEG v. Rodríguez y otros,* 159 DPR 98, 124 (2003). Cónsono con lo anterior, el Artículo 4.5 de la *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico",*

Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA sec. 9675, dispone que las conclusiones de derecho "serán revisables en todos sus aspectos por el tribunal". Así, la interpretación de la agencia administrativa "no prevalecerá cuando produzca resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública". *Otero Rivera v. Bella Retail Group, Inc.*, 214 DPR 473, 485 (2024) (Énfasis suplido en el original eliminado).

**B.**

Por otro lado, la Ley Núm. 121-2019, *supra*, sec. 1512, "reconoce la responsabilidad del Estado de mejorar las condiciones de vida de la población de adultos mayores y, además, garantizar el bienestar de éstos". Según se desprende del Artículo 8 de la Ley Núm. 121-2019, *supra*, sec. 1518, el Departamento de la Familia, al igual que otras agencias como el DCR, "vendrán obligados a darle prioridad a los tipos de maltrato, maltrato institucional, negligencia o negligencia institucional que se cometan en contra de cualquier persona adulta mayor". En atención a este deber, es meritorio definir maltrato y negligencia institucionales.

El maltrato institucional es cualquier omisión o acto en el que incurre una persona, incluyendo un funcionario de una institución pública, "que cause daño o ponga en riesgo a un adulto mayor de sufrir daño a su salud e integridad o a sus bienes". Artículo 3 (29)

de la Ley Núm. 121-2019, *supra*, sec. 1513. Por su parte, la negligencia institucional es cuando dicha persona "cause daño o ponga en riesgo a un adulto mayor de sufrir daño a su salud e integridad o a sus bienes incluyendo abuso sexual, conocido o que se sospeche, o que suceda como resultado de la política, prácticas y condiciones imperantes en la institución de que se trate". Artículo 3 (31) de la Ley Núm. 121-2019, *supra*, sec. 1513. Es por ello, que, en aras de cumplir con la política pública, los funcionarios de las agencias mencionadas en el estatuto están obligados a informar casos donde haya o se sospeche que existe una situación de maltrato institucional, negligencia institucional, entre otras vertientes. Artículo 17 de la Ley Núm. 121-2019, *supra*, sec. 1527; Artículo 18 de la Ley Núm. 121-2019, *supra*, sec. 1528.

## C.

El Reglamento de Registros emitido por el DCR, *supra*, pág. 1, "tiene el propósito de proveer las guías necesarias para la realización de registros personales a miembros de la población correccional, áreas de vivienda, vehículos y otras áreas de la institución". Lo anterior, mediante el uso de técnicas efectivas para la detección de contrabando, violaciones a las normas institucionales, recuperar propiedad hurtada o desaparecida, evitar fugas, al igual que otros riesgos de seguridad. Reglamento de Registros, *supra*, págs. 1-2.

Específicamente, el registro es aquella:

Inspección visual o búsqueda de contrabando, propiedad hurtada o desaparecida y situaciones de riesgo para la seguridad institucional mediante el uso de registro físico, de dispositivos o medios electrónicos, unidad canina, rayos x, o tecnología similar. El registro, en general, se realiza en personas (registro personal) o en áreas de vivienda, vehículos y otros lugares de la institución, con los propósitos antes mencionados.

Artículo V (6) del Reglamento de Registros, *supra*, pág. 4.

Ahora bien, los registros en áreas de vivienda y otros lugares de la institución se realizarán de forma irregular y sin previo aviso. Se inspeccionará toda el área incluyendo techos, pisos, equipos, camas, todos los accesorios de esta, lugares de almacenamiento o tablillas, baños, duchas y áreas comunes. Artículo VI (3)(b) del Reglamento de Registros, *supra*, pág. 16. En lo pertinente, el subinciso (c) del Artículo VI (3) de dicho reglamento dispone que:

c. Las áreas registradas se dejarán en las mismas condiciones en que estaban antes del registro, de ser posible. La propiedad personal de los miembros de la población correccional se manejará con cuidado, evitando su destrucción, alteración o desmantelamientos, a menos que sea necesario para la búsqueda de contrabando.

Reglamento de Registros, *supra*, pág. 16.

### III.

En el caso de marras, el Sr. De León Tricoché señaló la comisión de dos errores dirigidos a indicar que el procedimiento seguido por la División de Remedios Administrativos fue uno fútil y excesivo, y para argüir que el DCR incidió al tener funcionarios que

no cumplieron con el protocolo de su agencia ni se preocuparon por sus derechos.

Luego de un análisis del recurso de epígrafe y de los documentos que forman parte del expediente ante este tribunal, concluimos que el DCR no erró al emitir el dictamen recurrido.

Según expusimos en el tracto procesal, el Sr. De León Tricoché presentó una petición de remedio administrativo ante el DCR, ya que adujo que, como resultado de un registro dirigido por el teniente Pérez Geigel el 2 de abril de 2025, encontró varias de sus pertenencias regadas y rotas en el Módulo 1-D. Ante ello, el DCR, por conducto del teniente O'Neill Montalvo, emitió la determinación recurrida donde indicó que, ante dicha solicitud, dialogaron con los confinados sobre los hechos alegados por el Sr. De León Tricoché, al igual que, sobre las normas y las reglas de sus pertenencias. Asimismo, el DCR expuso que orientaron al teniente Pérez Geigel, quien estuvo a cargo del registro. Si fuera poco, luego de la presentación de la solicitud de reconsideración por parte del Sr. De León Tricoché, el DCR le indicó a este que orientaron a la supervisión y las personas envueltas en el registro del 2 de abril de 2025.

Por ende, y a la luz de lo anterior, nos resultan suficientes las gestiones que realizó el DCR dirigidas a atender la solicitud del Sr. De León Tricoché. Esas actuaciones no fueron irrazonables,

arbitrarias ni ilegales. Ciertamente, el Sr. De León Tricoché no derrotó la presunción de corrección y deferencia de la cual gozan las determinaciones finales de las agencias administrativas. De igual modo, si bien el Sr. De León Tricoché presentó un documento intitulado *Escala de reclasificación de custodia (casos sentenciados)*, de donde se desprende que nació en el año 1960, para demostrar que era una persona de edad avanzada, falló en probar que el DCR violó la Ley Núm. 121-2019, *supra*, aplicable a los hechos de marras y la cual enmendó la Ley Núm. 121-1986, *supra*. Por ende, el DCR actuó conforme al propósito del Reglamento de Registro, *supra*, de detectar contrabando, violaciones a las normas institucionales, recuperar propiedad hurtada o desaparecida, y evitar fugas, al igual que otros riesgos de seguridad.

Por último, adviértase que el derecho o práctica apelativa es rogado. *Cestero Aguilar v. Jta. Dir. Condominio*, 184 DPR 1, 22 (2011). En otras palabras, estamos privados de atender la solicitud de las fotos, alegadamente tomadas el día del incidente, ya que fue un asunto traído ante este foro por primera vez, y sin que el DCR hubiese tenido oportunidad de examinarlo.

## IV.

Por las razones discutidas anteriormente, confirmamos la *Respuesta del área concernida/superintendente* emitida el 16 de

abril de 2025 por el Departamento de Corrección y Rehabilitación, por conducto del teniente y comandante O'Neill Montalvo.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones